IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | Criminal No. TDC-24-331 |
| **CHASE MULLIGAN** | * | |
| **Defendant** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**SENTENCING MEMORANDUM**

COMES NOW the Defendant, Chase Mulligan (hereinafter, "Chase"), by and through his attorneys, Craig M. Kadish, Esq. and Craig M. Kadish & Associates, LLC, and submit this Sentencing Memorandum in support of a sentence of Three Hundred Sixty (360) months imprisonment. This sentence reflects the nature and circumstances of Chase's offense and his history and characteristics and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. §3553(a).

**I.    INTRODUCTION**

On December 19, 2023, federal agents executed a search warrant at Chase's residence in Silver Spring, Maryland, and seized his electronic devices; a forensic review later confirmed child sexual abuse material. He was indicted on November 14, 2024, and subsequently entered a plea of guilty to two (2) counts of Production of Child Sexual Abuse Material before the Honorable Theodore Chuang on May 20, 2025.

It is notable that following the execution of the search warrant, Chase immediately retained counsel and without a court mandate, began mental health treatment. He attended biweekly individual and group counseling sessions and regularly participated in Sex Addicts Anonymous

(SAA) meetings for approximately seven (7) months prior to his arrest. This voluntary engagement in treatment is demonstrative of Chase's personal accountability and early recognition of needed intervention.

Through this memorandum, the defense respectfully requests a sentence of Three Hundred Sixty (360) months imprisonment. As outlined below, a thirty-year term appropriately accounts for the severity of the offense, provides meaningful punishment, protects the public, promotes deterrence, and recognizes Chase's acceptance of responsibility and rehabilitative efforts, while remaining sufficient but not greater than necessary under 18 U.S.C. 3553(a).

## II. BACKGROUND AND TREATMENT HISTORY

Chase is twenty-eight years old, college educated young man with no prior criminal history. As referenced above, and more specifically herein, on April 18, 2024, Chase began mental health treatment with Dr. Frederick Berlin, M.D., Ph.D., Director of the National Institute for the Study, Prevention, and Treatment of Sexual Trauma and a nationally recognized expert in sexual behavior and paraphilic disorders. Chase participated in individual and group counseling sessions and regularly attended Sex Addicts Anonymous meetings until his arrest. His treatment was initiated voluntarily.

During his treatment with Dr. Berlin, Chase was the subject of a comprehensive psychiatric evaluation, submitted herewith as Exhibit 1 (a contemporaneous Motion to Seal has been filed requesting that the Evaluation remain confidential due to its inclusion of private medical and mental health information). Dr. Berlin's evaluation sets forth Chase's developmental history, his clinical presentation as well as Dr. Berlin's diagnostic impressions and treatment recommendations.

Dr. Berlin concludes that Chase demonstrates amenability to treatment and that structured therapeutic programming can reduce recidivism risk over time. He recommends continued psychotherapy and, if clinically indicated, pharmacological interventions as part of a long-term risk-reduction plan. Dr. Berlin is anticipated to be available to this Court at the sentencing hearing to provide additional detail should the Court have specific areas of inquiry.

Chase's sustained participation in treatment and cooperation with the evaluation process are relevant mitigating considerations under 18 U.S.C. 3553(a), particularly as they demonstrate accountability, insight, and rehabilitative potential.

### A. History and Characteristics of Chase

Chase has no criminal history and no history of violence. He accepted responsibility promptly, sought treatment, and engaged in said treatment immediately following the execution of a search warrant on his residence. These actions illustrate Chase's self-accountability, and willingness to confront the behavior that ultimately led to his arrest. He did not wait until the indictment or plea negotiations to seek treatment; instead, Chase voluntarily entered therapy, attended sessions on a consistent basis, participated in group counseling, SAA, and underwent a full psychosexual evaluation by Dr. Fred Berlin. Chase has already begun engaging in the necessary but difficult work towards rehabilitation.

Chase was born on April 8, 1997, in Lanham, Maryland. Much of his early childhood was spent in the Washington, D.C. area with his mother, whose reported substance abuse and instability created an unpredictable environment. When Chase entered high school, he moved to his maternal grandfather's home in Silver Spring, Maryland, seeking stability that he had not previously experienced. Under his grandfather's care, Chase was described as respectful, academically engaged, and athletically involved, and he did not present behavior or conduct concerns.

Chase's paternal relationship was minimal. He met his biological father only once at age seventeen during a family bereavement and there was no subsequent contact. Chase has one maternal half-brother, Blake, who later also moved into their grandfather's home. Blake continues to reside there, and Chase maintains a close relationship with him.

Despite early instability, Chase continued his academic education. He graduated from high school in Montgomery County, where he participated in varsity handball, then attended Seton Hall University where he earned a bachelor's degree in finance in 2019 and a graduate degree in Marketing in 2024. While in school, Chase worked part-time as an assistant to Seton Hall's Business Department Director and later held full-time employment at Amazon in Silver Spring. He then worked as a retail manager at Be and Cherry in Wheaton. Prior to his arrest, he had accepted employment with ALDO, which was terminated following indictment.

Chase's personal history and characteristics demonstrate that he is capable of functioning within structured expectations, maintaining employment, completing higher education, and supporting healthy family relationships. His background also supports the conclusion that he has the capacity for rehabilitation when provided structure, accountability, and therapeutic support.

**B. Treatment, Rehabilitation, and Risk Reduction**

Dr. Berlin's evaluation of Chase confirms that he is amenable to treatment and that therapeutic intervention can reduce the risk of recidivism going forward. Evidence-based treatment models exist for individuals with compulsive sexual behavior, including cognitive-behavioral and relapse-prevention approaches. The Bureau of Prisons offers structured sex-offender treatment programming at designated facilities, and Chase will have the opportunity to participate during the length of his incarceration. With a thirty-year sentence, there is adequate time for intensive treatment while in custody, followed by strict supervision and mandated therapy upon release to

ensure continued risk management and public safety. Under *Pepper v. United States*, 562 U.S. 476 (2011), rehabilitation is a valid variance factor. Chase has already demonstrated willingness to engage in therapy and insight into his conduct. A thirty-year sentence permits accountability while preserving the possibility of constructive reintegration under strict conditions.

### C. Deterrence and Protection of the Public

Chase faces a statutory maximum of sixty years in federal prison. A Three Hundred Sixty (360) month sentence represents an extremely severe term of imprisonment by any measure. It ensures long-term incapacitation well into late adulthood, allows for intensive treatment and risk management during incarceration, and will be followed by strict supervised release conditions. A sentence of thirty years adequately addresses deterrence and promotes respect for the law without imposing a de facto life sentence. Continued treatment during incarceration and mandatory therapy on supervision will further safeguard the community. A life-equivalent guideline sentence is not necessary to protect the public where a Three Hundred Sixty (360) month sentence accomplishes the statutory goals of punishment and deterrence.

### III. GUIDELINE OVERSTATEMENT, NON-CONTACT DISTINCTION, AND SENTENCING PROPORTIONALITY

The advisory guideline calculation in this case results in a recommended sentence of life imprisonment. This outcome is driven primarily by the cumulative structure of U.S.S.G. §2G2.1, which assigns multiple enhancements which routinely overlap producing offense levels that reach or exceed life, even for first-time non-contact offenders like Chase. Enhancements for age, number of images/contacts online, use of a computer, and pattern conduct apply in most, if not nearly all production cases and often yield a guideline range that fails to distinguish between defendants who are "hands-on" with children and those who engage in admittedly damaging, but remote conduct. Such is the case here, where Chase, though having engaged in abhorrent online conduct, never

physically engaged with a child (nor committed a "hands-on" offense against anyone) and yet as shown below has a guidelines calculation which exceeds that of many individuals who commit "hands-on" offenses against children, and in some examples, the population in general. In fact, because of compounding factors in the calculation of Chase's guidelines, his offense level calculations exceed those of individuals convicted of attempted murder, terroristic attempts with nuclear weapons, etc. (examples of which are set forth below).

The Supreme Court has made clear that the Guidelines are advisory and must be considered together with the statutory factors in 18 U.S.C. 3553(a). See *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). The Fourth Circuit likewise recognizes that a sentencing court may vary from the advisory range when the guideline outcome fails to reflect individualized circumstances or produces a punishment greater than necessary. See *Nelson v. United States*, 555 U.S. 350 (2009); *Rita v. United States*, 551 U.S. 338 (2007).

Chase's greatest plea group adjusted offense level is a Forty (40) (see paragraph 108 of Chase's Pre-Sentence Report). It is notable that Chase's guidelines calculations are increased by an additional Five (5) points pursuant to U.S.S.G 3D1.4 (his multiple count adjustment). This combined with an additional Chapter Four enhancement for his pattern of activity pursuant to U.S.S.G. 4B1.1 catapults his offense level to a Fifty (50). Even subtracting his 3E1.1(a) and 3E1.1(b) acceptance of responsibility points from the calculated offense level of 50, Chase's adjusted offense level is still a 47. However, given that the Sentencing Table does not exceed 43, Chase's offense level is treated as a 43.

While not necessarily meaningful for Chase, his adjusted offense level includes an enhancement of +2 for use of a computer/interactive computer service, which is present in *every* CSAM prosecution and represents an "enhancement" in the guidelines calculation which is not an

enhancement at all. It is an increase heaped onto the calculations of every CSAM defendant (whether production, possession, distribution or receipt) and fails to distinguish between offenders. The aforesaid notwithstanding, given that he is being treated as a 43 (from a 47), this factor has little practical meaning.

### IV.  A SENTENCE OF THREE HUNDRED SIXTY MONTHS IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO SATISFY 18 U.S.C. §3553(a)

Under 18 U.S.C. §3553(a), the Court is directed to impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing. A Three Hundred Sixty (360) month sentence satisfies each statutory objective imposing severe punishment, promoting respect for the law, deterring similar conduct, protecting the public for decades, and permitting treatment and eventual reentry supervision.

#### A. Nature and Circumstances of the Offense

Chase has pled guilty to meeting young girls online and engaging with them. He obtained sexualized images of them online and would use the threat of releasing those images to their family and friends in order to coerce them into the production of further images. Many of these images are shocking and exhibit his profound lack of understanding (at the time) of the harm he was doing as a result of his behavior. While the Defense does not discount psychological harm to the victims in this case, the behavior exhibited by Chase was exclusively remote. There exists an entire generation (of which Chase is one) who "live online". Life to these (generally) younger people is much like a video game. They have grown up engaging in fantasy worlds online in gaming, in relationships, and in the case of Chase and those like him, their sexual lives. There is an "unreality" relative to the individuals on the other end of the line and often (as is the case here) an associated "disassociation" with the victim on the screen.

**B. The Guidelines in Chase's Case Reflect Disproportionate Sentencing Exposure Compared to Other Extreme Federal Crimes**

While Chase's conduct is abhorrent and causes deep harm, a comparative review of federal guideline applications demonstrates that his final adjusted offense level of 47 exceeds the guideline levels for violent and even fatal conduct. This disparity stems from guideline stacking in U.S.S.G. § 2G2.1 and § 3D1.4, which, while technically accurate, can produce outcomes untethered from proportional culpability. Examples for consideration:

i. *Attempt to Smuggle a Nuclear Weapon (Without Terrorism Enhancement)*

- Statute: 18 U.S.C. § 831
- Guideline: U.S.S.G. § 2M6.1
- Base offense level: 42
- Substantial planning: +2
- Adjusted offense level: 44 (capped at 43 for Guidelines purposes)
- CHC I → Guidelines range: Life

Even a defendant attempting to smuggle nuclear material (without terrorism enhancement) would receive a lower offense level than Chase.

ii. *Kidnapping with Sexual Assault of a Minor*

- Statute: 18 U.S.C. § 1201, § 2241
- Guideline: U.S.S.G. § 2A4.1
- Base level: 32
- Sexual abuse of victim: +4
- Victim under 18 and not a relative: +2
- Extended detention: +2
- Acceptance of responsibility: –3
- Adjusted level: 37
- CHC I → Range: 210–262 months (17.5–21.8 years)

A forcible sexual kidnapping of a child yields a significantly lower sentencing range than Chases online behavior.

iii. *Carjacking Resulting in Death*

- Statute: 18 U.S.C. § 2119(3)
- Guideline: U.S.S.G. § 2B3.1 → § 2A1.1 (First Degree Murder)

- Offense level: 43
- CHC I → Range: Life

This crime involves a homicide committed during a violent offense yet still results in effectively the same adjusted offense level as in Chase case.

   iv. *Attempted Murder with a Firearm Causing Injury*

- Statute: 18 U.S.C. § 1113, § 924(c)
- Guideline: § 2A2.1
- Base level: 33
- Serious injury: +4
- Firearm enhancement (18 U.S.C. § 924(c)): Mandatory consecutive 84 months
- Acceptance of responsibility: –3
- Adjusted level: 34 + 84 months
- CHC I → Range: 151–188 months + 84 = ~20–23 years

  v. *Aggravated Sexual Abuse of a Child Under the Age of 12*

- • Statute: 18 U.S.C. § 2241(c)
  • Guideline: § 2A3.1
  • Base level: 30
  • Victim under age 12: +4
  • Use of force: +4
  • Acceptance of responsibility: –3
  • Adjusted level: 35
  • CHC I → Range: 168–210 months (mandatory minimum 360 months applies)

  Chase's case, while admittedly egregious, did not involve physical contact, yet the advisory guidelines treat him equivalently and, in some instances, more harshly than the examples above. Though he is not statutorily eligible for a life sentence, a sentence of sixty (60) years is the functional equivalent for him.

  In the final analysis, a sentence of Three Hundred Sixty (360) months recognizes the seriousness of his online behavior without eliminating proportional distinction between non-contact and hands-on abuse of a child.

  **C.  Avoiding Unwarranted Sentencing Disparities**

Section 3553(a)(6) instructs courts to avoid unwarranted sentencing disparities. As discussed above, guideline scoring in production cases often yields life-level ranges even where no physical contact occurred. Chase's requested sentence of Three Hundred Sixty (360) months recognizes the seriousness of production conduct but maintains proportionality with more aggravated hands-on cases.

### D. REQUEST FOR VARIANCE – ACCEPTANCE OF RESPONSIBILITY MUST HAVE A MEANINGFUL EFFECT ON A DEFENDANT'S GUIDELINES CALCULATION

The United States Sentencing Guidelines expressly provide for a three-level reduction when a defendant clearly demonstrates acceptance of responsibility. U.S.S.G. §3E1.1. That provision is not aspirational, it is functional. Its purpose is to reward defendants who promptly accept responsibility, conserve judicial resources, and spare victims the burden of trial.

Here, Chase pled guilty at an early stage, fully accepted responsibility for his conduct, and spared the government the time, expense, and emotional toll of trial. Under §3E1.1, that conduct warrants a three-level reduction. Yet because the Sentencing Table caps offense levels at 43, Chase's adjusted offense level of 47 is treated as 43, and the acceptance-of-responsibility reduction becomes mathematically meaningless. Whether Chase accepted responsibility or forced the government to trial, the advisory guideline sentence would remain the same: life imprisonment, and though statutorily capped at 60 years, such a sentence if effectively a life sentence. That result is inconsistent with both the text and purpose of §3E1.1.

The mechanical application of the Level 43 Cap creates a sentencing anomaly in this case. The Guidelines do not contemplate a system in which acceptance of responsibility can be nullified by arithmetic happenstance. A defendant whose offense level is 42 receives the full benefit of acceptance; a defendant whose offense level is 47 receives none, despite identical

post-offense conduct. This produces an unwarranted disparity and undermines the Guidelines' carefully calibrated incentive structure. Acceptance of responsibility is intended to matter precisely in the most serious cases, where the cost of trial is highest and the need for accountability is greatest.

Sentencing courts retain discretion to vary where the Guidelines, as applied, fail to account for a circumstance that takes the case outside the heartland. Here, the interaction between §3E1.1 and the level 43 cap creates precisely such a circumstance. A variance to offense level 40 restores the intended effect of acceptance of responsibility by ensuring that Chase receives the three-level benefit the Guidelines promise. This approach does not minimize the seriousness of the offense. An offense level of 40, Criminal History Category I, yields an advisory range of 292 to 365 months which amounts to decades of imprisonment. Indeed, the sentence requested by the Defense leans towards the upper end of such a Guideline calculation. However, at the same time, it preserves proportionality, fairness, and the Guidelines' credibility by ensuring that acceptance of responsibility has real sentencing consequences.

If acceptance of responsibility is rendered meaningless in cases at the top of the Sentencing Table, defendants facing the most serious charges are disincentivized from pleading guilty. That outcome frustrates the purposes of sentencing under 18 U.S.C. §3553(a), including respect for the law, efficient administration of justice, and just punishment. Granting a variance to an offense level of 40 appropriately balances those interests while maintaining a sentence that reflects the gravity of the offense and the need to protect the public.

Accordingly, a sentence of Three Hundred Sixty (360) months acknowledges the seriousness of this offense, imposes a decades-long sanction, protects the public, promotes deterrence, and preserves necessary proportional distinction between contact and non-contact

conduct. It further reflects Chase's lack of criminal history, documented participation in treatment, acceptance of responsibility, and potential for rehabilitation. A downward variance is therefore warranted.

V.     CONCLUSION

For the reasons stated above, Chase respectfully requests that this Honorable Court grant his request for a variance and impose a sentence of Three Hundred Sixty (360) months, followed by supervised release with treatment and monitoring as directed by Dr. Fred Berlin and the United States Probation Office. This sentence is sufficient, but not greater than necessary, to satisfy the purposes of 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ Craig M. Kadish
Craig M. Kadish, Esq. (Federal Bar #: 08191)
Craig M. Kadish & Associates, LLC
111 S. Calvert Street, Suite 2805
Baltimore, Maryland 21202
(410) 837-0020
craig@kadishlawfirm.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of December 2025, the foregoing ***Sentencing Memorandum*** was filed electronically via PACER upon counsel of record for the United States, Megan McKoy, Esquire.

/s/ Craig M. Kadish
Craig M. Kadish, Esq.