## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. TDC-24-331 |
| | * | |
| CHASE WILLIAM MULLIGAN, | * | |
| | * | |
| Defendant | * | |
| | * | |
| | * | |

**\*\*\*\*\*\*\***

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The Defendant Chase William Mulligan (the "Defendant" or "Mulligan") sexually exploited, groomed, and extorted over 100 girls—ranging in age from five to 17—to produce child sex abuse materials ("CSAM"). The Defendant used multiple accounts and online platforms, including Snapchat, Discord, and Roblox, to target minor victims living not only in the United States but across the world, including in Australia, Canada, Denmark, Spain, the Philippines, and the United Kingdom. The Defendant directed the minor victims to turn on their cameras, undress, pose in sexual positions, masturbate, insert objects in their genitals, perform sexual acts with dogs, urinate, defecate and lick their own feces, among other degrading and dehumanizing acts. When the minor victims did not comply with his directives, the Defendant often threatened to find them or post their nude images and videos online. The Defendant's coercive scheme has inflicted significant and enduring harm in the minor victims' lives—causing severe emotional trauma, loss of safety, and social isolation, and potentially impacting their long-term relationships and mental health into adulthood.

On May 20, 2025, pursuant to a written plea agreement (ECF 39), the Defendant appeared before the Court and pleaded guilty to Counts One and Three of the Indictment (ECF 1), which

charged him with Production of Child Pornography with respect to Minor Victim 1 and Minor Victim 2, in violation of 18 US.C. § 2251(a).

The United States of America, by and through its undersigned counsel, hereby submits the following memorandum in aid of the Defendant's sentencing which is currently scheduled for **January 13, 2026, at 9:30 a.m.**  ECF 52.  For the reasons set forth below, the government respectfully requests that the Court impose **a sentence of 720 months in prison, to be followed by 30 years of supervised release**.  The government believes this sentence is sufficient, but not greater than necessary, to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a).

As discussed further below, the government seeks restitution in the total amount of $160,500.[1]  The government does not recommend a fine but asks the Court to impose a $100 special assessment fee for both Counts One and Three.

## BACKGROUND

### I.     Procedural Background

On November 14, 2024, a federal grand jury returned a four-count Indictment against Mulligan.  ECF 1.  The indictment charged three counts of production of child pornography, in violation of 18 U.S.C. § 2251(a), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).

Two days later, on November 16, 2024, Mulligan was arrested by Fairfax County, Virginia, Police Department.  ECF 6.  On November 18, 2024, Mulligan's "Rule 5 Out" Hearing was held before a U.S. magistrate judge in the U.S. District Court for the Eastern District of Virginia.

---

[1] On December 29, 2025, the government filed a Consent Motion to Continue Sentencing (ECF 53) by 30 days to allow the parties to continue to discuss and determine the appropriate restitution amount to be ordered at sentencing.  Should the Court grant the motion, the government anticipates filing an amended sentencing memorandum reflecting any updated restitution amounts sought by the minor victims in this case.

On December 2, 2024, Mulligan's initial appearance and arraignment were held before U.S. Magistrate Judge Gina L. Simms.  ECF 10.  Mulligan was ordered detained by agreement, without prejudice.  ECF 12.

On May 20, 2025, pursuant to a written plea agreement (ECF 39), Mulligan pleaded guilty to Counts One and Three of the Indictment, Production of Child Pornography as to Minor Victim 1 and Minor Victim 2, which carry a mandatory minimum of 15 years of imprisonment and a maximum of 60 years of imprisonment, pursuant to 18 U.S.C. § 2251(a).

## II.    Stipulation of Facts

In the plea agreement, the parties stipulated and agreed that, if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt.

Between at least 2019 and December 2023, the Defendant, **Chase William Mulligan** ("**MULLIGAN**") used numerous accounts from internet-based communication services Snapchat, Discord, Roblox, Skype, Omegle,[2] and Instagram to employ, use, persuade, induce, entice, and coerce at least 108 minor females, ages 5 to 17, into creating and sending him sexually explicit images and videos of themselves. In addition to directing minors to expose their genital areas and engage in sexual conduct, **MULLIGAN**, who was born in 1997 and at all relevant times resided in Silver Spring, Maryland, coerced multiple minors to urinate on camera, insert objects into their vagina and anus, and participate in sexual acts with dogs.

**MULLIGAN** used the internet, a facility of interstate and foreign commerce, to contact various minors within and outside of the United States. The majority of the minor victims, including Victims 1 through 9, lived in the United States, but several resided in other countries, including Australia, Canada, Denmark, Spain, the Philippines, and the United Kingdom. Through his enticement and production of child pornography of at least 108 minors, **MULLIGAN** engaged in a pattern of activity involving the sexual abuse and exploitation of a minor and a pattern of activity involving prohibited sexual conduct.

### <u>MULLIGAN's Sexual Exploitation of Victim 1, Victim 2, and Victim 3</u>

Between at least July 2022 and December 2022, **MULLIGAN** coerced Victim 1, who was 12 years old, Victim 2, who was five years old, and Victim 3, who was 12 years old, to produce and send child sex abuse materials (CSAM) to him. Victim 1 was friends with Victim 3. Victim 2

---

[2] Omegle is a free online chat website that allows users to socialize with others without the need to register. The service randomly pairs users in one-on-one chat sessions where they can chat anonymously.

and Victim 3 were sisters. **MULLIGAN** created and used usernames on Snapchat to communicate with Victim 1 and Victim 3, including but not limited to: "accorposting," "genssends," "shhhnoddy," "icykites," and "spiketrex." Although **MULLIGAN** utilized different usernames on Snapchat, he often used the same display name, "Add Me," which was the name that appeared on **MULLIGAN**'s profile and in his message chats with Victim 1 and Victim 3.

On or about August 11, 2022, the Federal Bureau of Investigation (FBI) Knoxville received information from the Tennessee Highway Patrol (THP) regarding an online child exploitation investigation in Monroe County, Tennessee. THP reported that the user of the Snapchat account "accorposting" communicated with and coerced Victim 1 and Victim 3 into creating and sending CSAM to an adult male.

Following the report, on or about August 24, 2022, Victim 1 was interviewed. Victim 1 stated that she had communicated with a Snapchat user, later identified as **MULLIGAN**. Victim 1 further stated that in those communications, she told **MULLIGAN** her true age (12 years) and her name. Victim 1 said that **MULLIGAN** requested naked images and videos of her, and **MULLIGAN** told her that if she did not do so, **MULLIGAN** would come to her house. Victim 1 explained that at **MULLIGAN**'s direction, she participated in video calls and sent naked and sexually explicit images and videos of herself almost every day for a period of weeks.

During her interview, Victim 1 also stated that she introduced her friend, Victim 3, who was also 12 years old, to **MULLIGAN** in the hope that together they might be able to make **MULLIGAN** stop his demands. Instead, **MULLIGAN** also demanded that Victim 3's five-year-old sister, Victim 2, participate in video calls, and if Victim 1 and Victim 3 did not do so, Victim 1's sexually explicit images and videos would be released.

A review of Victim 1's cellphone revealed an image of a prepubescent minor female with her buttocks exposed, with a creation date of July 29, 2022. Victim 1 identified the prepubescent minor female as Victim 2 and stated that this was the image that she took and sent at the direction of the "Add Me" account, or **MULLIGAN**.

A further review of Victim 1's cell phone revealed Snapchat conversations and screenshots of Snapchat conversations between Victim 1 and **MULLIGAN** during August 2022. An excerpt is provided below:

| | |
|---|---|
| **MULLIGAN**: | [Victim 1] |
| **MULLIGAN**: | I'm Sorry |
| | |
| Victim 1: | Idc |
| **MULLIGAN**: | I still need you to do calls ok |
| Victim 1: | No i am on the phone with [Victim 3] |
| Victim 1: | I am not doing shit for you |
| | |
| **MULLIGAN**: | If you tell [Victim 3]. I'm posting you rn |
| Victim 1: | I haven't told her |
| **MULLIGAN**: | Ok let's call |

|  |  |
|---|---|
| Victim 1: | No |
| **MULLIGAN**: | [Victim 1] |
| **MULLIGAN**: | We can be friends |
| **MULLIGAN**: | And I can be nice |

***

| | |
|---|---|
| Victim 1: | The more you talk the more screenshots there are |
| **MULLIGAN**: | What do you mean by that? |
| Victim 1: | The more you text me the more I'm going to screenshot all the text that is what I mean |
| Victim 1: | And I sent [Victim 3] all the screenshots and she said to fuck off and you will be gitting her payback |
| Victim 1: | And also you need to stop making five year old kids do crap it's freaking stupid |
| Victim 1: | You are such a pervert |
| Victim 1: | I hope you go to jail for so long you die in there |
| Victim 1: | For forcing kids to do stuff |
| Victim 1: | Me and [Victim 3] were crying because what you do |

On or about September 2, 2022, Victim 3 was interviewed, and she stated that in approximately August 2022, Victim 1 told Victim 3 about a Snapchat user known as "Add Me" and "accorposting" (**MULLIGAN**) that Victim 1 had communicated with on Snapchat. A review of Victim 3's cell phone revealed Snapchat conversations and screenshots of Snapchat conversations between Victim 3 and the user of the Snapchat accounts "accorposting," "shhhnoddy," and "spiketrex," or **MULLIGAN**. Below is an excerpt of a conversation that occurred between Victim 3 and **MULLIGAN** on or about July 31, 2022:

| | |
|---|---|
| **MULLIGAN**: | Are you going to call or not |
| **MULLIGAN**: | Don't get [Victim 1] involved. Are you going to call or not. |

***

| | |
|---|---|
| **MULLIGAN**: | I will post the vid of you and your sister [Victim 2] if you keep it up |
| Victim 3: | Keep what up I'm not doing anything I'm just telling you that I can't do it here because it isn't my house |

***

| | |
|---|---|
| **MULLIGAN**: | Then you are doing the call at 6pm. |

***

| | |
|---|---|
| Victim 3: | What do I have to do for you to treat me like |

|  | | you treat [Victim 1] |
|---|---|---|
|  | **MULLIGAN**: | If you listen and don't lie to me. Then everything will be okay |
| *** | | |
|  | Victim 3: | I can send |
|  | Victim 3: | Like videos and pics |
|  | Victim 3: | How many |
|  | Victim 3: | What do you mean full body |
| *** | | |
|  | **MULLIGAN**: | You have 1min to start |
|  | **MULLIGAN**: | Or I will start |

Following the interviews of Victim 1 and Victim 3, investigators submitted administrative subpoenas to Snapchat requesting subscriber information and recent IP addresses for the accounts "accorposting," "icykites," "spiketrex," "shhhnoddy," and "genssends." A majority of the IP addresses that were logged into these Snapchat accounts appeared to be managed by several companies that utilized a Virtual Private Network (VPN). However, investigators traced IP addresses managed by Verizon and Comcast to the Silver Spring, Maryland residence of **MULLIGAN**, as well as a Rehoboth Beach, Delaware home owned by **MULLIGAN**'s family member and frequented by **MULLIGAN**.

On or about December 20, 2023, law enforcement executed a search warrant for **MULLIGAN**'s Silver Spring, Maryland residence. During the execution of the warrant, **MULLIGAN** was present, and law enforcement seized approximately 22 devices. During a forensic review of the devices, law enforcement identified CSAM on the following devices, all of which were found in **MULLIGAN**'s bedroom or on his person:

    a.    a Seagate Portable Hard Drive, 5TB, S/N: NACMTTDE;
    b.    an iPhone 6, S/N: FFMPQ70RG5MH;
    c.    an iPhone 8, S/N: F4JVL370JC68;
    d.    an iPhone 8 Plus, S/N: F2PVF8L0JCM2;
    e.    an iPhone 8 Plus, S/N: F2LVKJB0JCLN;
    f.    a Toshiba Hard Drive, 1TB S/N: 15EXS562SZM5; and
    g.    a Lenovo ThinkPad T470S laptop, S/N: PC0MGW75.

The devices seized from **MULLIGAN**'s residence that **MULLIGAN** used to produce, save, and store child pornography were not manufactured in the State of Maryland and therefore traveled in interstate commerce prior to their use by **MULLIGAN**.

In total, law enforcement identified at least 15,000 files of CSAM, including images and videos of prepubescent minors, saved on **MULLIGAN's** devices. Of that total, law enforcement identified over 1,000 files of CSAM produced by **MULLIGAN**.

The files found on **MULLIGAN**'s devices included 56 videos of CSAM depicting Victim 1, Victim 2, and Victim 3. In particular, investigators identified a screen recording of a live

Snapchat video call showing messages between **MULLIGAN**, with a display name "AM," and Victim 1 and a corresponding live video of Victim 1. The video file was approximately 11 minutes and 30 seconds in length and indicated a creation date of July 16, 2022. In the message chat, **MULLIGAN** directed Victim 1 to have her dog lick her vagina. The corresponding live video then showed a dog licking Victim 1's vaginal area. Victim 1 messaged **MULLIGAN** that the dog was licking her and it was "weird," but **MULLIGAN** instructed her to keep the camera there and try again. During the live video, the dog continued to lick Victim 1, and Victim 1 messaged that this was "gross." **MULLIGAN** responded that Victim 1 could stop but then stated that the dog liked it and to keep the camera on the dog. Halfway through the video, Victim 1 stated that she did not want the dog licking her, and **MULLIGAN** told Victim 1 to put the dog down but to show her body. Victim 1 then showed her body on camera, wearing only a bra and no underwear.

In addition, investigators identified a screen recording of a live Snapchat video call which showed messages between **MULLIGAN**, with the display name "AM," and Victim 1 and a corresponding live video of Victim 1, with a creation date of on or about August 12, 2022. The video file was approximately ten minutes and 16 seconds in length. Victim 1 was observed in the live video wearing only a bra and no underwear. In the message chat, **MULLIGAN** instructed Victim 1 to "turn around," "butt up," and "spread with both hands and hold." **MULLIGAN** further instructed Victim 1 to unmute her audio. Victim 1 messaged back that if she unmuted, **MULLIGAN** would hear her cry. **MULLIGAN** responded that it was "fine" and to turn her camera on. Victim 1 turned her camera on and was observed on her knees and her hands with her buttocks up in the air, as instructed by **MULLIGAN**. Victim 1 then used her hands to spread her anus and vagina, which were exposed to the camera. **MULLIGAN** instructed Victim 1 to unmute, and Victim 1 stated, "you want to know what is bad, how you're making a 12-year-old do this, and you're forcing me to do it."

Investigators also identified a screen recording of a live Snapchat video call generated on or about July 30, 2022, which showed messages between **MULLIGAN**, with the display name "AM," and Victim 3, as well as a corresponding video of Victim 2 and Victim 3. The video file was approximately 15 minutes and 50 seconds in length. In the message chat, **MULLIGAN** asked Victim 3 to "turn cam on and show full body." Victim 3 responded, "Would it be ok if my sister does it?" **MULLIGAN** responded "ok" and asked if Victim 3 would hold the camera. **MULLIGAN** then instructed Victim 3 to turn on the camera. The live video showed Victim 3's face and then Victim 2, who was five years old at the time and was observed sitting on the toilet with no clothing on except underwear. In the chat, **MULLIGAN** messaged, "all the way" and "have her stand." Victim 2 then was shown standing naked. **MULLIGAN** instructed Victim 2 to "lay down and spread" and "keep cam on for 2 minutes." Victim 2 was observed naked, lying down with her legs spread apart and her vagina exposed to the camera. **MULLIGAN** asked, "can you spread or will she?" Victim 3 responded, "she won't. She's only five. I won't either." **MULLIGAN** instructed Victim 3 to have Victim 2 turn around and have her buttocks to the camera. Victim 3 stated that Victim 2 was done. **MULLIGAN** again instructed to have Victim 2 spread her buttocks in "doggy" for two minutes, but Victim 3 refused. **MULLIGAN** directed Victim 2 to do so for two minutes and then she would be done, or Victim 3 would have to. Victim 3 responded that they were "done forever." **MULLIGAN** replied, "forever, no. Today, yes." **MULLIGAN** then directed Victim 1 to touch Victim 3's "boobs" for two minutes and then they

were done for today. During the live video, a person's hands were observed touching Victim 3's breasts.

### MULLIGAN's Sexual Exploitation of Victim 4

Victim 4 was 11 years old and resided in Massachusetts. A review of the devices seized pursuant to the search warrant resulted in the identification of approximately 29 screen recordings of live Discord video calls between **MULLIGAN** and Victim 4 that occurred in December 2023. In the live video calls, **MULLIGAN** instructed Victim 4 to expose her genitals to the camera, masturbate, and insert objects into her anus. **MULLIGAN** also sent several CSAM videos of other minor female victims to Victim 4 to show how to pose for him. **MULLIGAN** also instructed Victim 4 to defecate on camera and to touch and lick her feces, which Victim 4 did. **MULLIGAN** asked Victim 4 to secretly record her four-year-old sister in the bathroom, but Victim 4 said no.

Investigators also identified on **MULLIGAN**'s devices a Skype chat between **MULLIGAN** and Victim 4 which occurred between on or about December 3, 2023, and December 14, 2023. During the chat, **MULLIGAN** told Victim 4, "add me back on discord or I'll post all your vids online and in servers. I have everything saved.. listen ok."

### MULLIGAN's Sexual Exploitation of Victim 5

Victim 5 was 12 years old and resided in Alabama. Investigators identified on **MULLIGAN**'s devices communications between **MULLIGAN** and Victim 5, as well as CSAM of Victim 5, on Snapchat, Discord, and Roblox from November 2023 to December 2023. **MULLIGAN** asked for Victim 5 to send naked videos of herself, and if she did not, **MULLIGAN** stated that he knew where Victim 5 lived and would find her and her family. Victim 5 then sent videos of her vagina. **MULLIGAN** also demanded videos of Victim 5 performing sexual acts with her dog, which Victim 5 produced. In addition, **MULLIGAN** asked Victim 5 to send sexual videos of Victim 5's three-year-old sister, but Victim 5 refused to do so.

### MULLIGAN's Sexual Exploitation of Victim 6

Victim 6, who was prepubescent and nine years old, resided in Florida. On **MULLIGAN**'s devices, investigators identified screen recordings of live Snapchat video calls between **MULLIGAN** and Victim 6 in December 2023. In the videos, at **MULLIGAN**'s direction, Victim 6 exposed her genitals to the camera, masturbated, and inserted objects in her vagina. During a live video call, **MULLIGAN** asked Victim 6, "Can I see your butt on call? Like open it for me." Victim 6 complied with **MULLIGAN**'s request.

### MULLIGAN's Sexual Exploitation of Victim 7

Victim 7 was 13 years old and resided in New York. In December 2023, **MULLIGAN** communicated with Victim 7 on Snapchat. Investigators identified a screen recording of a Snapchat live video call which showed messages between **MULLIGAN** and Victim 7 and a corresponding video that showed Victim 7. In the message chat, **MULLIGAN** asked Victim 7 if she had a dog and if the dog "licks." **MULLIGAN** told Victim 7, "some girls do it" in reference

to the dog licking. **MULLIGAN** sent Victim 7 a video to show her how a dog licks. At **MULLIGAN**'s request, Victim 7 was observed having her dog lick her genitals.

### MULLIGAN's Sexual Exploitation of Victim 8

Victim 8 was 11 years old and resided in Nevada. In April 2023, **MULLIGAN** communicated with Victim 8 on live Snapchat video calls. Investigators identified a video call found on **MULLIGAN**'s devices in which **MULLIGAN**'s face and naked torso were seen as Victim 8 undressed. **MULLIGAN** asked Victim 8 to pose in specific sexual positions, and Victim 8, who was naked, complied. Victim 8 then asked **MULLIGAN** for permission to put her clothes back on.

### MULLIGAN's Sexual Exploitation of Victim 9

Victim 9, who was 13 years old and resided in Idaho, communicated with **MULLIGAN** on Snapchat in December 2023. On **MULLIGAN**'s devices, investigators identified videos sent by Victim 9 to **MULLIGAN** that showed Victim 9 cutting her own leg with a razor. Victim 9 told **MULLIGAN** that she cut her thighs, ribs, stomach, wrist, arm, shoulder, chest, calves and hips. Victim 9 said she was cutting herself with a friend, and **MULLIGAN** responded that the cutting turned him on and "damn that's hot." Even after learning Victim 9 was self-harming, Mulligan asked Victim 9 to engage in sexually explicit conduct, including with her friend, also a minor. Victim 9 then sent sexually explicit videos of herself, but not her friend, at **MULLIGAN**'s request. **MULLIGAN** also sent to Victim 9 CSAM he had produced of other minors.

### STATUTORY SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

A district court must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). After calculating the range, it must consider the § 3553(a) factors before imposing the sentence. *Id.* at 49-50.

The statutory factors for the Court's consideration under 18 U.S.C. § 3553(a) include: (1) the nature and circumstances of the offense and history and characteristics of the defendant, and (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public and provide the defendant with needed services. "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant,

unless otherwise prohibited by law."  U.S. Sentencing Guidelines ("US.S.G.") § 1B1.4; *see also* 18 U.S.C. § 3661.  "If the district court decides to impose a sentence outside the guidelines range, it must ensure that its justification supports 'the degree of the variance.'"  *United States v. Evans,* 526 F.3d 155, 161 (4th Cir. 2008) (quoting *Gall,* 552 U.S. at 51).  The district court is given "some latitude" and "a degree of deference" to tailor a particular sentence to the circumstances.  *United States v. Green,* 436 F.3d 449, 456-57 (4th Cir. 2006); *United States v. Moreland,* 437 F.3d 424, 433 (4th Cir. 2006).

**I.    As Set Forth in the Presentence Report and Parties' Plea Agreement, the Defendant's Total Offense Level is 43 and His Criminal History Category is I, Resulting in a Guideline Sentence of Life in Prison.**

*Base Offense Level:*  Although the Defendant pleaded guilty to only two production counts as to Victim 1 and Victim 2, the parties have stipulated to facts involving at least seven additional victims (Victim 3 through Victim 9).  Accordingly, the Defendant's guidelines are calculated as if the exploitation of each victim had been contained in a separate count of conviction, pursuant to U.S.S.G. § 2G2.1(d)(1).  The government agrees with the Presentence Report ("PSR") (ECF 43), and as set forth in the parties' plea agreement (ECF 39), that the Defendant's base offense level for each count is 32, under U.S.S.G. § 2G2.1(a).  For each count, a two-level increased is also applied to the base offense level, pursuant to U.S.S.G. § 2G2.1(b)(6), because the offense involved the use of a computer or interactive computer service for the possession of the material.  Below are additional calculations specific to each count.

Count One/Group One (Victim 1)

As to Count One (concerning Victim 1 who was 12 years old at the time), a two-level increase is applied to the base offense level, pursuant to U.S.S.G. § 2G2.1(b)(1)(B), because the offense involved a minor who had attained the age of 12 years but had not attained the age of 16

years.  Another two-level increase is applied, pursuant to U.S.S.G. § 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act or sexual contact.  The adjusted offense level for Count One is 38.  *See* ECF 39 at 4-5; PSR ¶¶ 35-42.

Count Three/Group Two (Victim 2)

For Count Three (concerning Victim 2 who was five years old), a four-level increase is applied to the base offense level, pursuant to U.S.S.G. § 2G2.1(b)(1)(A), because the offense involved a minor who had not attained the age of 12 years old.  A two-level increase is applied, pursuant to U.S.S.G. § 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act or sexual contact.  The adjusted offense level for Count Three is 40.  *See* ECF 39 at 5; PSR ¶¶ 43-50.

Group Three (Victim 3)

As to Group 3 (concerning Victim 3 who was 12 years old), a two-level increase is applied to the base offense level, pursuant to U.S.S.G. § 2G2.1(b)(1)(B), because the offense involved a minor who had attained the age of 12 years but had not attained the age of 16 years.  An additional two-level increase is applied, under U.S.S.G. § 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act or sexual contact.  The adjusted offense level for Count Three is 38.  *See* ECF 39 at 5; PSR ¶¶ 51-58.

Group Four (Victim 4)

With respect to Group 4 (concerning Victim 4 who was 11 years old), a four-level increase is applied to the base offense level, under U.S.S.G. § 2G2.1(b)(1)(A), because the offense involved a minor who had not attained the age of 12 years old.  Another two-level increase is applied,

pursuant to U.S.S.G. § 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act or sexual contact.  The adjusted offense level for Group Four is 40.[3]

Group Five (Victim 5)

For Group Five (concerning Victim 5 who was 12 years old), a two-level increase is applied to the base offense level, pursuant to U.S.S.G. § 2G2.1(b)(1)(B), because the offense involved a minor who had attained the age of 12 years but had not attained the age of 16 years.  An additional two-level increase is applied, pursuant to U.S.S.G. § 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act or sexual contact.  Another two-level increase is applied, under U.S.S.G. § 2G2.1(b)(3), because the Defendant knowingly engaged in distribution.[4]  The adjusted offense level for Group Five is 40.  *See* ECF 39 at 6; PSR ¶¶ 68-75.

Group Six (Victim 6)

As to Group Six (concerning Victim 6 who was 9 years old), a four-level increase is applied to the base offense level, under U.S.S.G. § 2G2.1(b)(1)(A), because the offense involved a minor who had not attained the age of 12 years old.  Another two-level increase is applied, pursuant to U.S.S.G. § 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act or sexual contact.  The adjusted offense level for Group Six is 40.  *See* ECF 39 at 6-7; PSR ¶¶ 76-83.

Group Seven (Victim 7)

As to Group Seven (concerning Victim 7 who was 13 years old), a two-level increase is applied to the base offense level, pursuant to U.S.S.G. § 2G2.1(b)(1)(B), because the offense

---

[3] In the plea agreement (ECF 39 at 5-6), the government and the Defendant agreed on an adjusted offense level of 40 for Group Four.  In the PSR, U.S. Probation notes that the adjusted offense level for Group Four is 42, applying an additional two-level increase based on the Defendant's distribution of CSAM of other minor victims to Victim 4.  *See* PSR ¶¶ 62-67.

[4] In the plea agreement (ECF 39 at 6), the government and the Defendant applied a two-level increase for distribution of CSAM to Victim 5.  U.S. Probation did not apply that enhancement in the PSR, *see* ¶¶ 68-75.

involved a minor who had attained the age of 12 years but had not attained the age of 16 years. An additional two-level increase is applied, pursuant to U.S.S.G. § 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act or sexual contact. The resulting offense level for Group Seven is 38. *See* ECF 39 at 7; PSR ¶¶ 84-91.

Group Eight (Victim 8)

As to Group Eight (concerning Victim 8 who was 11 years old), a four-level increase is applied to the base offense level, pursuant to U.S.S.G. § 2G2.1(b)(1)(A), because the offense involved a minor who had not attained the age of 12 years old. For Group Eight, the adjusted offense level is 38. *See* ECF 39 at 7; PSR ¶¶ 92-98.

Group Nine (Victim 9)

With respect to Group Nine (concerning Victim 9 who was 13 years old), a two-level increase is applied to the base offense level, pursuant to U.S.S.G. § 2G2.1(b)(1)(B), because the offense involved a minor who had attained the age of 12 years but had not attained the age of 16 years. Another two-level increase is applied, under U.S.S.G. § 2G2.1(b)(3), because the Defendant knowingly engaged in distribution. For Group Nine, the resulting offense level is 38. *See* ECF 39 at 8; PSR ¶¶ 99-106.

***Total Offense Level:*** Groups One through Nine do not group. ECF 39 at 8. A five-level increase applies to the highest offense level (40), pursuant to U.S.S.G. § 3D1.4, and the combined adjusted offense level is 45.[5] The offense level is decreased by 3 levels because of the Defendant's acceptance of responsibility and timely notification of his intention to enter a guilty plea. ECF 39 at 8; PSR ¶¶ 112-13. However, the offense level is increased by 5 additional levels to **47**, pursuant

---

[5] The government is bound by the terms of the plea agreement and does not object to the PSR but notes that based on the U.S. Probation's Guidelines calculations, the highest offense level is 42, not 40. *See* PSR ¶¶ 107-08. So, the combined adjusted offense level is 47, not 45. *Id.* ¶ 110.

to U.S.S.G. § 4B1.5(b)(1), because the Defendant engaged in a pattern of activity involving prohibited sexual conduct. ECF 39 at 9; PSR ¶ 111. Because the total offense level exceeds 43, the offense level is treated as a level 43. PSR ¶ 114.

*Criminal History Category:* The government agrees with the PSR (*see* ¶ 117) that the Defendant's criminal history category is I based on a criminal history score of zero.

*Guidelines Range:* The resulting Guidelines range for Groups One through Nine is life in prison.

## II.    Argument

The government respectfully recommends that **a total term of imprisonment of 720 months (a sentence of 360 months as to Count One and a consecutive sentence of 360 months as to Count Three) to be followed by 30 years of supervised release**, will be sufficient, but not greater than necessary in light of the relevant § 3553(a) factors.

### A.    Nature and Circumstances of the Offense

First, the nature and circumstances of the Defendant's offense are incredibly serious and support a sentence to a significant term of imprisonment. As described in the stipulation of facts (ECF 39-1), over the course of at least four years, the Defendant coerced, exploited, and extorted over 100 minor victims into producing CSAM. The Defendant targeted girls on various online platforms and instructed his victims to take off their clothes, spread their genital areas and breasts, masturbate, insert objects in their vaginas and anuses, have dogs lick their vaginas, urinate, and/or taste their own feces. When the minor victims pushed back on his instructions, the Defendant often threatened to post their nude images online and/or find them. Although the Defendant was based in Maryland, his coercive scheme was far-reaching, exploiting victims across the United States and the world.

To carry out this coercive scheme, the Defendant primarily used Snapchat, an application in which messages and images (often referred to as "snaps") can auto-delete.[6]  While minor victims may have believed their snaps were private, temporary, or seen only once, the Defendant screen recorded his minor victims—often saving and using these nude videos and images to coerce, threaten, and sextort minor victims into creating additional CSAM.  The Defendant could also view the minor victims' locations if shared with him on Snapchat,[7] and he sometimes used this information to threaten his victims into producing more CSAM.

For years, the Defendant attempted to conceal his identity with various pseudonyms and account names, namely "Add Me."  However, after Victim 1 and Victim 3 bravely came forward and reported his sexual abuse, law enforcement traced the IP addresses for his Snapchat accounts to his Silver Spring residence and his family's Rehoboth Beach vacation home.  On December 20, 2023, law enforcement executed a search warrant for that residence and seized several devices, including seven of the Defendant's devices that contained thousands of CSAM files.  In total, law enforcement identified at least 15,000 files of CSAM, including images and videos of prepubescent minors.  Of that total, law enforcement identified over 1,000 files of CSAM produced by the Defendant.

Child pornography crimes are among the most atrocious crimes in our society, because they "harm and debase the most defenseless of our citizens."  *United States v. Williams*, 553 U.S. 285, 307 (2008).  As the United States Supreme Court noted in *Paroline v. United States*, 572 U.S.

---

[6] *See* Snapchat Support, "When Does Snapchat delete Snaps and Chats," https://help.snapchat.com/hc/en-us/articles/7012334940948-When-does-Snapchat-delete-Snaps-and-Chats ("Delete is our default.").

[7] *See* Snapchat Support, "Can everyone see my location on Snap Map?" https://help.snapchat.com/hc/en-us/articles/7012295586068-Can-everyone-see-my-location-on-Snap-Map.

434, 439-40 (2014), "[t]he demand for child pornography harms children in part because it drives production, which involves child abuse. The harms caused by child pornography, however, are still more extensive because child pornography is a permanent record of the depicted child's abuse, and the harm to the child is exacerbated by its circulation." (internal quotation marks and citations omitted). The Court continued, "Because child pornography is now traded with ease on the Internet, the number of still images and videos memorializing the sexual assault and other sexual exploitation of children, many very young in age, has grown exponentially." *Paroline*, 572 U.S. at 440 (internal citations omitted); *see also United States v. Blinkinsop*, 606 F.3d 1110, 1118 (9th Cir. 2010) ("[t]he children involved in pictorial and cinematic pornography additionally endure ongoing harm because their images have been preserved in a permanent medium"); *United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001) ("children depicted in the pornography suffer a direct and primary emotional harm when another person possesses, receives or distributes the material"). As the Seventh Circuit noted in *United States v. Shutic*, 274 F.3d 1123, 1126 (7th Cir. 2001), "children . . . suffer profound emotional repercussions from a fear of exposure, and the tension of keeping the abuse a secret . . . concern for the welfare of the children who are used to create pornography is part of the public concern over child pornography." (internal citations omitted).

The Fourth Circuit has emphasized that the term "child pornography" does not accurately reflect what is depicted in the images and videos being traded online. *United States v. Tucker*, 60 F.4th 879, 887 (4th Cir. 2023). Instead, the term "child sexual abuse material" ("CSAM") more "'accurately reflect[s] what is depicted—the sexual abuse and exploitation of children.'" *Id.* (quoting *United States v. Morehouse*, 34 F.4th 381, 384 n.1 (4th Cir. 2022) (quotation marks omitted)); *see also United States v. Arce*, 49 F.4th 382, 385 n.1 (4th Cir. 2022) ("Our use of the

16

more common phrase, child pornography, should not be taken to obscure the fact that many of [the defendant's] images reflect the brutal sexual abuse of very young children."); *Paroline*, 572 U.S. at 440 (noting that the production of child pornography "involves child abuse" and that child pornography is a permanent record of "the depicted child's abuse").

Courts have recognized that even a "'passive' consumer who merely receives or possesses the images directly contributes to this continuing victimization." *Sherman*, 268 F.3d at 545. "Indeed, one of the reasons for criminalizing the 'mere' possession of child pornography is to create an incentive for the possessor to destroy the material, and alleviate some of these harms to the children depicted." *Id*. at 547. Here, the Defendant was not a "mere possessor" of CSAM but instead directed the creation of and distributed CSAM of his own victims who have struggled with shame, guilt, and self-esteem as a result of the Defendant's sexual abuse. Although some of the victims have sought and are continuing to attend therapy, the Defendant's sexual abuse and exploitation has affected their own identity and relationships with other family members, friends, and strangers.

**B.    History and Characteristics of the Defendant**

Unlike many individuals who appear before this Court, the Defendant has had access to financial resources and educational opportunities to live a law-abiding life. Mulligan received his college and master's degrees from Seton Hall University. He also has the support of several family members who lived with him while he was preying on children and could have helped him. For several years, Mulligan exploited numerous minor victims but took no affirmative steps to cease his conduct until he was arrested and detained in this case.

17

### C.      Respect for the Law, Deterrence, and Public Safety

This factor supports a long sentence.  As described above, the nature and circumstances of the offense are extremely serious and require a sentence that promotes respect for the law, provides just punishment for the offense, affords adequate deterrence, and protects the public from further crimes of the Defendant.  The government submits that a total sentence of 720 months' imprisonment is sufficient, but not greater than necessary, to achieve those goals, as well as the other goals laid out in § 3553(a).

### D.      Recommended Term of Supervised Release

The government also seeks the imposition of 30 years of supervised release for the same reasons as stated above.  A significant period of supervised release will promote respect for the law and ensure protection of the public while the Defendant is under supervision.  A significant period of supervised release also will give the Defendant access to mental health treatment, which the Defendant will need when released.

The government agrees with imposing all conditions of supervised release listed in the PSR except for Additional Recommended Condition #12.  This condition does not seem reasonably related to the relevant sentencing factors because the Defendant has not engaged in a form of deception that would require a probation officer employing "periodic polygraph testing . . . to ensure that [he is] in compliance with the requirements of [his] supervision or treatment program."

The government also recommends amending Additional Recommended Condition #15 to state, "You must participate in a sex offense-specific treatment program and follow the rules and regulations of that program, *including periodic polygraph testing if so required by the treatment provider*." (emphasis added).  *See United States v. Dotson*, 324 F.3d 256, 261 (4th Cir. 2003) (affirming imposition of polygraph testing "as a potential treatment tool").

18

### III.    Forfeiture

On July 23, 2025, the Court entered a preliminary order for forfeiture.  ECF 45.

### IV.    Restitution and Victim Impact Statements

As noted in the PSR (*see* ¶ 30), restitution must be ordered in an amount, pursuant to 18 U.S.C. § 2259(b)(2)(B), that "reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000."  A summary of the victims' restitution requests and victim impact statements is summarized below.  Two direct victims, who have submitted victim impact statements, have requested restitution but have not submitted supporting documentation.  *See* Exhibits A and B (sealed).  Several series victims have submitted restitution requests and/or victim impact statements.  *See* Exhibits C through AC (sealed).

| Victim | Loss Amount | Exhibit No. (SEALED) |
|---|---|---|
| B.B. | $5,000 | A |
| B.R. | $5,000 | B |
| ZooFamily1 Series ("Ali") | $3,000 | C |
| BestNecklace Series ("Maria") | $10,000 | D |
| Lighthouse1 Series ("Maureen") | $10,000 | E |
| MarineLand1 Series ("Sarah") | $10,000 | F |
| Masha River Series ("Nicoletta") | $5,000 | G |
| SparklingVelvet ("SV") | $7,000 | H |
| Sweet Pink Sugar Series ("Mya") | $5,000 | I |
| Sweet White Sugar Series ("Pia") | $7,500 | J |
| Tara Series Victim ("Sloane") | $10,000 | K |
| Teal & Pink Princess 2 Series ("Jenny") | $10,000 | L |
| Teal & Pink Princess 2 Series ("Raven") | $10,000 | M |

| | | |
|---|---|---|
| Vicky Series | $10,000 | N |
| Braid & Tile Series ("Audrey") | $3,000 | O |
| Aprilblonde Series ("April") | $10,000 | P |
| JBN Flowers1 Series ("Julie") | $10,000 | Q |
| JBN Flowers2 Series ("Ivy") | $10,000 | R |
| 2crazygurls Series ("Chelsea") | $10,000 | S |
| Angela Series | $10,000 | T |
| Violet Series | N/A | U |
| CBGirl Series | N/A | V |
| CurlsRed2 Series | N/A | W |
| Dalmatians Series C | N/A | X |
| Dalmatians Series KE | N/A | Y |
| Dalmatians Series KY | N/A | Z |
| Mother Full 20121 Series | N/A | AA |
| PD11 Series | N/A | AB |
| PinkHeartSisters2 Series ("Tori") | N/A | AC |
| **TOTAL** | **$160,500** | |

The contact information for the victims requesting restitution will be provided to the Court. No victim has asked to speak at sentencing.

## V.    Special Assessment

A special assessment of $100 as to each count must be imposed under 18 U.S.C. § 3014(a)(2)(A).

## VI.    Conclusion

For the foregoing reasons, and based on any additional information that may be presented at the sentencing hearing, the government respectfully requests that the Court impose a total sentence of 720 months of imprisonment, followed by 30 years of supervised release, which the

government views as sufficient, but not greater than necessary, to achieve the purposes of sentencing.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By:        _____/s/_____
Megan S. McKoy
Elizabeth Wright
Assistant United States Attorneys